## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER ROOKE, | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| v. | : | |
| THE STOP & SHOP SUPERMARKET COMPANY, LLC, | : | |
| Defendant. | : | March 17,  2020 |

## **COMPLAINT**

## **JURISDICTION AND VENUE**

1.      This is an action for damages, declaratory and injunctive relief, and attorney's fees brought pursuant to the Age Discrimination in Employment Act (ADEA) 29 U.S.C. §621 et seq., the Americans with Disabilities Act (ADA), 42 USC §12101 et. seq., the Federal Family Leave Act (FMLA) 29 U.S.C. §2612, et seq.  and the Connecticut Fair Employment Practices Act (CFEPA), C.G.S. § 46a-60(a) et seq. The Complaint also contains state common law claims arising out of the same operative facts.  This action seeks declaratory, monetary, compensatory, liquidated and punitive damages, equitable relief, and attorneys' fees, and all other damages available under state or federal law.

2.      Jurisdiction of this action is invoked pursuant to 28 U.S.C. §§1331, 1343, and 42 U.S.C. §2000e-5(f)(3).  This court has supplemental jurisdiction over the common law claims pursuant to 28 U.S.C. §1367, in that the common law claims are so

related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.    Venue in this district is appropriate pursuant to 28 U.S.C. §1391 and 42 U.S.C. §2000e(f)(3), because this is the district in which the discriminatory conduct occurred.

**PARTIES**

4.    The Plaintiff, Christopher Rooke, is a citizen of the United States, actually residing in Jewett City, Connecticut.

5.    At all times relevant to this Complaint, he was an employee of the Defendant, as that term is defined by the ADEA, 29 U.S.C. §630(f),, the Americans with Disabilities Act, 42 USC §12101 et seq., the Federal Family Leave Act (FMLA) 29 U.S.C. §2612, et seq. and the Connecticut Fair Employment Practices Act (CFEPA), C.G.S. §46a-51 (9).

6.    The Plaintiff's date of birth is September 10, 1966.

7.    At all relevant times the Plaintiff has been a person with a disability as that term is defined by the Americans with Disabilities Act, as amended, and the Connecticut Fair Employment Practices Act.  In the alternative, the Plaintiff has a record of a disability and/or is perceived as having a disability.  Specifically, in 2015, he underwent emergency surgery for pancreatitis.  This is an impairment that required surgery, medication and rehabilitation.  This impairment substantially limited major life functions including, but not limited to, the major bodily functions of the digestive and endocrine systems.   In addition, the Plaintiff has hypertrophic cardiomyopathy which has resulted in my requiring a pacemaker.  This impairment substantially limited major

life functions including, but not limited to, the major bodily functions of the cardiovascular system.  The Plaintiff a qualified individual with a disability, capable of performing all of the essential duties of his position either with no accommodation or with a reasonable accommodation.

8.      The Defendant is The Stop & Shop Supermarket Company, LLC (hereinafter the Defendant or "FSB") which has a business address and a principal place of business at 42 Town Street Norwich CT.  The Defendant is engaged in a business affecting commerce and employs well over 500 employees.  At all times relevant to this complaint, the Defendant has been an employer within the meaning of the Age Discrimination in Employment Act (ADEA) 29 U.S. C. § 630 (b), the Americans with Disabilities Act, as Amended, the Federal Family Leave Act (FMLA),  29 U.S.C. §2612, et seq.,  and the Connecticut Fair Employment Practices Act (CFEPA) C.G.S. §46a-51(10).

9.      On or about January 29, 2019 the Plaintiff filed administrative charges of discrimination on the basis of his age and disability with the Connecticut Commission of Human Rights and Opportunities and with the Equal Employment Opportunities Commission.

10.     On or about January 10, 2020 the Plaintiff received a release of jurisdiction from the Connecticut Commission of Human Rights and Opportunities.  On or about, January 15, 2020 the Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission.

11.     The Plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

3

## FACTS

12.     The Plaintiff was hired by the Respondent in February 1999 as a Store Detective in the Loss Prevention Area.

13.     In 2002, the Plaintiff was promoted to Senior Store Detective.  In January 2015, the Plaintiff  was promoted to Asset Protection Co-ordinator (APC) under Asset Protection Manager Mary Colcombe.

14.     During his employment the Plaintiff's performance was always satisfactory or better.

15.     The Plaintiff received very good to excellent evaluations every year.

16.     On May 7, 2015 the Plaintiff collapsed while at work.  He was taken by ambulance to Hartford Hospital where he underwent emergency surgery for pancreatitis.  He was disabled from working until on or about December 2015 as he recuperated.

17.     In or about March 2017, he was evaluated for his 2016 performance.  He was rated as meeting or exceeding requirements in every area.  His manager noted that he was a great contributor and that she was "very fortunate" to have him in the role of APC.

18.     On June 12, 2017, the Plaintiff  underwent total abdominal reconstructive surgery to repair multiple large hernias related to his 2015 pancreatitis surgery.  He was disabled from working for 4-6 weeks returning on or about September 7, 2017.   He took a leave of absence protected under the ADA, the CFEPA and the FMLA.

19.     In January 2018, Silvana Baxter became the APM for the Plaintiff's area,

4

replacing Mary Colcombe.

20.     Silvana Baxter had known the Plaintiff for over 15 years.  She was aware that he had been out on a medical leave, and had submitted medical paperwork.  Ms. Baxter  was also aware of the Plaintiff's disabilities because it had been a matter of public knowledge.  There had even been a fund-raiser to help the Plaintiff with medical bills.   On information and belief, Mary Colcome also discussed the Plaintiff's disabilities with Ms. Baxter.

21.     In or about March 2018, the Plaintiff was evaluated for his 2017 performance by his outgoing manager Mary Colcombe.  He was rated as meeting or exceeding requirements in every area.

22.     When Ms. Baxter became the Plaintiff's manager, he immediately noticed that she treated him in a different and less favorable manner.   She questioned everything the Plaintiff did and did not appear to trust him.  No reason for this change was given.  For example, even though she had indicated that she had no issues with occasional overtime, when the Plaintiff worked overtime, she questioned him and asked whether it had been approved.  For example on one occasion she questioned him extensively when he had been asked to stay late to complete an investigation at the request of Mary Colcombe, when Ms. Baxter had been out ill.   On information and belief, she did not treat other, younger and non-disabled employees in this manner.

23.     In April 2018, Baxter, along with human resources official Julio Colon, questioned the Plaintiff about a schedule he had submitted in order to help out a colleague.  Seth Boysner, who had gone on vacation without having first created his employee schedule.  While it was normal to create the schedule before going on

vacation, Boysner (who on information and belief was substantially younger than the Plaintiff and not disabled) was not disciplined. However, Baxter accused the Plaintiff of cutting and pasting a previous weeks schedule.  She claimed that he showed a lack or integrity and that her first instinct was to write him up.   It was not true that the Plaintiff had simply copied the previous schedule, and the Plaintiff was able to show that there were differences between the schedules.  Moreover, had it been true copying a schedule while covering for a colleague would not generally be a subject of discipline, nor would it show a lack of integrity.  On information and belief, Baxter did not treat other, younger and non-disabled employees in this manner.

24.     On more than one occasion, Baxter failed to submit the Plaintiff's hours, resulting in a delay in his getting paid.  While he was eventually paid, on one occasion this resulted in him bouncing a mortgage payment check.  On information and belief, Baxter did not treat other, younger and non-disabled employees in this manner.

25.     The Plaintiff  also noticed that his duties were being removed and given to a subordinate Mike Lord (aged 26-27).   Mr. Lord did not have any disabilities. Among the duties that the Plaintiff had previously performed exclusively that were given to Michael Lord were inventory attendance, interviews of associate cases and assignment of investigating sensitive associate cases.   No explanation was ever given for reducing his responsibilities.

26.     Ms. Baxter made negative comments about associate William Pepin, who was in his 60's and had disabilities.  She referred to him as " dead weight".  On information and belief, Baxter also held him to higher standards than younger, non-disabled employees, including writing him up for alleged performance issues.  On

6

information and belief, the Defendant ultimately terminated Mr. Pepin for pretextual reasons.

27.    On information and belief, the Defendant also terminated older and non-disabled employee Todd Decamp for pretextual reasons.

28.    Under Company policy, reduced merchandise is only to be purchased after it is put on display for the general public.

29.    Reduced items are placed on what is called a "speed table".  These tables are on wheels so that they can be placed on the floor, and easily moved to the back room if they are in the way, for example when there is substantial restocking going on. If items had already been placed on a speed table and out on the floor, for purchase, they could be purchased in accordance with the policy.

30.    On October 2, 2018, the Plaintiff openly purchased three Axe body washes that had already been marked as reduced and placed on a speed table for sale to the general public. While the table was in the back room, it was the Plaintiff's understanding that it had been previously out on the floor.  Therefore, the Plaintiff was complying with the policy by only purchasing the items after they had been put on display for the general public.

31.    On October 3, the Plaintiff  was called into a meeting by Baxter and human resources official Julio Colon and questioned about this purchase.  He explained what had occurred, specifically noting that he believed that these items had been offered for sale to the public before he purchased them.  The Plaintiff explained that he understood that the speed table had simply been rotated off of the floor at the time he picked up and purchased the product.  The Plaintiff explained that he felt that

7

this was in accordance with the policy, and was very embarrassed that they felt he had acted improperly.  He explained that he had no intent to violate the policy.

32.     They informed the Plaintiff that this was a serious integrity issue and placed him on suspension.  He was told someone would contact him early the following week. This did not occur.

33.     Ms. Baxter was a trained asset protection officer who generally asked for written statements from witnesses.  However, in the case of the Plaintiff Baxter did not follow this usual policy.

34.     After this meeting Ms. Baxter reported to the Director of Asset Protection, Dale Duquette, and to Michelle Castellana, the Director of Human Resources.   Ms. Baxter falsely reported what the Plaintiff said during this interview.   Based on these false reports, the Plaintiff was terminated.

35.     On the Friday following his October 3, 2018 suspension, the Plaintiff received a call from Ms. Baxter and was told to meet her at an offsite location, a McDonalds close to the Plaintiff's home.  It was highly unusual that she requested to have the Plaintiff meet her there, rather than at a Stop & Shop store.  He wanted to come to the office but was told that "the company deems it appropriate to meet at an offsite location".

36.     The Plaintiff came to the restaurant and brought a family member for support.  However, when he arrived Ms. Baxter and Ms. Colon refused to allow the witness to be present.   Ms. Baxter has claimed that this was because they wanted to preserve the Plaintiff's privacy.   However, while they refused to allow him to have a family member present for support, the Defendant terminated in the Plaintiff in a busy

8

McDonald's with many people around, within earshot of people he knew.  This was humiliating for the Plaintiff.

37.     Both Colon and Baxter told the Plaintiff that it took so long to get back to the Plaintiff because they were waiting for leadership to make a decision.

38.     The Plaintiff  was not informed of the availability of COBRA for medical continuation.  The Plaintiff was told by Ms. Baxter and Mr. Colon that his medical insurance would be ending that day, 10/12/18, as well as all other company benefits.

39.     The Plaintiff later discovered, that all of his medical coverage had been cancelled by the company on October 7, 2018, six days prior to his being informed that he had been terminated by Baxter and Colon.

40.     The Defendant's Associate Purchase Policy applies to all employees equally whatever their role.  Ms. Baxter understood that it was important that the policy be applied in a fair and consistent manner.  However, in terminating the Plaintiff, the defendant treated him far more harshly than other employees.

41.     In fact, other, younger, non-disabled employees who engaged in serious misconduct such as marking down items to purchase, fraud, theft and drinking on the job were not terminated.

42.     After his termination, the Plaintiff's duties were reassigned to substantially younger  employees, who had not exercised rights protected under the FMLA, and who did not have the disabilities that he had or the record of disabilities that he had and/or who were not perceived as disabled.

43.     On information and belief, the Defendant has engaged in a pattern and practice of discrimination on the basis of age, disability, and/or retaliation for the

exercise of rights protected under the Federal Family Medical Leave Act.

44.     On information and belief, the Defendant's stated reason was a pretext for discrimination and retaliation.

## COUNT ONE (ADEA)

1.     The Plaintiff hereby repeats, realleges and incorporates paragraphs 1-44 above.

45.     The Defendant has engaged in a pattern and practice of discriminating against older employees.

46.     The Defendant's stated reason for terminating the Plaintiff's employment is pretextual.  The Defendant's decision was motivated by unlawful animus toward the Plaintiff because of his age.

47.     By this conduct, the Defendant has discriminated against the Plaintiff in violation of the rights secured to him by the ADEA, 29 U.S.C. §621, et seq.

48.     The Defendant engaged in the above discriminatory conduct with malice or with reckless indifference to the Plaintiff's federally protected rights.

49.     As a result of the Defendant's illegal conduct, the Plaintiff has suffered damages in the form of lost wages, benefits and other attendant rights, privileges and conditions of employment.  As a result of the Defendant's conduct as described above, the Plaintiff has suffered serious emotional distress, anxiety, pain and suffering, humiliation and mental anguish.

## COUNT TWO (ADA)

1.     The Plaintiff hereby repeats, realleges and incorporates paragraphs 1-

49 above.

50.     The Plaintiff is an individual with a disability within the meaning of the ADA.

51.     The Defendant has engaged in a pattern and practice of discrimination against disabled employees.

52.     The Defendant's stated reason for terminating the Plaintiff's employment is pretextual.  The Defendant's decision was motivated by unlawful animus toward the Plaintiff because of his disability, perceived disability or record of disability.

53.     By this conduct, the Defendant has discriminated against the Plaintiff in violation of the rights secured to him by the ADA.

54.     The Defendant engaged in the above discriminatory conduct with malice or with reckless indifference to the Plaintiff's rights.

55.     As a result of the Defendant's illegal conduct, the Plaintiff has suffered damages in the form of lost wages, benefits and other attendant rights, privileges and conditions of employment and has endured mental and emotional distress, anxiety, pain and suffering, humiliation and mental anguish and other personal injuries.

**COUNT THREE (CFEPA) (Age Discrimination)**

1.     The Plaintiff hereby repeats, realleges and incorporates paragraphs 1-55 above.

56.     The Plaintiff is an individual protected under the age discrimination provisions of CFEPA.

57.     The Defendant has engaged in a pattern and practice of discrimination against older employees.

11

58.     The Plaintiff's age was a motivating factor in the Defendant's decision to terminate his employment.

59.     The Defendant's stated reason for terminating the Plaintiff's employment is pretextual.  The Defendant's decision was motivated by unlawful animus toward the Plaintiff because of his age.

60.     By this conduct, the Defendant has discriminated against the Plaintiff in violation of the rights secured to him by CFEPA, C.G.S. §46a-60a1 and §46a-100 et. seq.

61.     The Defendant engaged in the above discriminatory conduct with malice or with reckless indifference to the Plaintiff's rights.

62.     As a result of the Defendant's illegal conduct, the Plaintiff has suffered damages in the form of lost wages, benefits and other attendant rights, privileges and conditions of employment and has endured mental and emotional distress, anxiety, pain and suffering, humiliation and mental anguish and other personal injuries.

## COUNT FOUR (CFEPA) (Disability Discrimination)

1.     The Plaintiff hereby repeats, realleges and incorporates paragraphs 1-62 above.

63.     The Plaintiff is an individual with a disability within the meaning of the CFEPA.

64.     The Defendant has engaged in a pattern and practice of discrimination against employees protected under the disability provision of CFEPA.

65.     The Plaintiff's age disability was a motivating factor in the Defendant's decision to terminate his employment.

12

66.     The Defendant's stated reason for terminating the Plaintiff's employment is pretextual.  The Defendant's decision was motivated by unlawful animus toward the Plaintiff because of his age and/or disability, perceived disability or record of disability.

67.     By this conduct, the Defendant has discriminated against the Plaintiff in violation of the rights secured to him by CFEPA, C.G.S. §46a-60a1 and §46a-100 et. seq.

68.     The Defendant engaged in the above discriminatory conduct with malice or with reckless indifference to the Plaintiff's rights.

69.     As a result of the Defendant's illegal conduct, the Plaintiff has suffered damages in the form of lost wages, benefits and other attendant rights, privileges and conditions of employment and has endured mental and emotional distress, anxiety, pain and suffering, humiliation and mental anguish and other personal injuries.

**COUNT FOUR: Retaliation for the Exercise of Rights Protected under the FMLA**

1.     The Plaintiff hereby repeats, realleges and incorporates paragraphs 1-69 above.

70.     As described above, the Plaintiff took FMLA leave and otherwise exercised rights protected under the FMLA.

71.     The Plaintiff's medical leave and/or exercise of his rights under the FMLA was a motivating factor in the Defendant's decision to give treat him more negatively than other employees and to terminate his employment.

72.     The Defendant's stated reason for the Plaintiff's negative treatment and termination are pretextual.  The Defendant's decisions were motivated by unlawful animus toward the Plaintiff for having taken leave under the FMLA, or otherwise

exercising rights protected by the Federal Family Medical Leave Act.

73.     By the conduct described above, the Defendant violated the Plaintiff's rights as protected by the FMLA, 29 U.S.C. §§ 2612, 2614 and 2615.

74.     By this conduct, the Defendant has engaged in a discriminatory or retaliatory practice with malice or reckless indifference to the federally protected rights of the Plaintiff.

75.     As a result of the Defendant's illegal conduct, the Plaintiff has suffered damages in the form of lost wages, benefits and other attendant rights, privileges and conditions of employment and has endured mental and emotional distress and other personal injuries.

**COUNT FIVE: Negligent Infliction of Emotional Distress**

1.     The Plaintiff hereby repeats, realleges and incorporates paragraphs 1-75 above.

76.     The Defendant did not follow its usual policies and procedures in terminating the Plaintiff.

77.     Rather than allowing him to be terminated privately at the Defendant's business offices, the Defendant insisted upon terminating him publicly in a restaurant frequented by people he knew.  This was upsetting and humiliating to the Plaintiff.

78.     The Defendant terminated the Plaintiff in this public place in such a manner that other patrons could hear the termination and the accusations being made against him.  This was also upsetting and humiliating to the Plaintiff.

79.     While terminating him in a public place and in a public manner, the Defendant refused to allow the Plaintiff to have a family member present for support as

he was terminated.

80.      The Plaintiff was very concerned about the continuation of his health insurance because of his disabilities.  However, the Defendant failed to give him information about his COBRA at this termination meeting.   Instead, he was simply told that his benefits would be ending later that date.

81.      This was false.  The Plaintiff later discovered that all of his medical coverage had actually been cancelled by the company on October 7, 2018, six days prior to his being informed that he had been terminated.

82.      By terminating the Plaintiff in the manner it did, the Defendant knew, or should have known, that such conduct posed an unreasonable risk of causing emotional distress and that such distress, if caused, might result in illness or bodily injury.

83.      As a result of the Defendant's conduct the Plaintiff has in fact experienced severe emotional distress which has caused the Plaintiff mental and emotional distress, anxiety, pain and suffering, humiliation and mental anguish, sleeplessness, and loss of appetite.

## DEMAND FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests this Court grant him the following relief:

1. Order the Defendant to cease and desist from the discriminatory acts against him;

2. Order the Defendant to reinstate the Plaintiff to the position that he would have been in absent the Defendant's discriminatory treatment;

3. Order the Defendant to make the Plaintiff whole for all lost wages and benefits;

4. Award the Plaintiff compensatory and punitive damages, including damages for pain and suffering;

5. Award the Plaintiff liquidated damages.

6. Award the Plaintiff reasonable attorneys fees interest and costs;

7. Award the Plaintiff any other legal or equitable relief that the Court deems appropriate.

## REQUEST FOR TRIAL BY JURY

The Plaintiff's requests a trial by jury as to all claims to which he is entitled.

THE PLAINTIFF,

BY: _____

Mary E. Kelly ct07419
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105
(860) 233-9821
mekelly@lapm.org